Good morning, and may it please the Court. My name is Jessica Zhang, and I'm appearing on behalf of the petitioner, Vilma Ghira-Torres. I would like to reserve two minutes of my time for rebuttal. Counsel, please be reminded that the time shown on the clock is your total time remaining. Yes, Your Honor. All right. Because of her prior counsel's ineffective representation, Ms. Ghira-Torres has never had the chance to fully present her claims for asylum, withholding, and relief under the Convention Against Torture to an immigration judge. This Court can and should ensure that she receives due process in her removal proceedings by granting her petition and remanding her case to the BIA for two reasons. First, the BIA failed to provide a reasoned explanation for its decision to deny Ms. Ghira-Torres' motion to remand. And second, even in its bare conclusory decision, the BIA committed numerous legal errors in denying her motion. I will turn first to the BIA's failure to issue a reasoned explanation for its decision. If they had given one example of a strategic decision, would that have been enough? If there was a strategic example in this case, that would have been enough. But I don't think that there was here. Ms. Ghira-Torres' prior counsel failed to speak to her, failed to investigate her claim, failed to review her declaration with her, failed to tell her that she would need to testify in front of the immigration judge, much less prepare her for that testimony. Under this Court's precedent in Lynn and also its unpublished case in De Leon, that together shows ineffective assistance of counsel. And in both of those cases, this Court was clear that those were not tactical decisions. For example, in Lynn, prior counsel also failed to speak to her client, failed to prepare him to testify, failed to find evidence that was clearly available at the time. And this Court held that that was not trial strategy, sound or otherwise. But where was the prejudice if Johnny didn't tie the violence to his membership in the community group? So the prejudice is shown through Ms. Ghira-Torres' declaration here, and all that needs to be proven at this stage is that she has a viable claim for prejudice. A viable claim for relief. Sorry, I'm so sorry. A viable claim for asylum and relief on her underlying merits. And she's done so with her declaration, which must be taken as true at this stage. Well, it doesn't have to be taken as true, does it, if it conflicts with the evidence that was actually in the record? If Your Honor is talking about the other evidence submitted with the motion to remand, it doesn't conflict. So Johnny just doesn't mention anything about his community group. And to the extent that those may be inconsistency, that's proper for the immigration judge to decide once the case is before the immigration judge again, because Ms. Ghira-Torres will be able to file a full application. Johnny and Ms. Ghira-Torres will be allowed to testify in front of the immigration judge. Even if you did fall short, is the proper comparison between what an ineffective assistance would provide and what you got? In other words, you get the benefit, do you not, under the standard of comparing not how you fell short, but how it would have been done had you had effective assistance? That's correct, Your Honor. The standard is whether ineffective assistance may have impacted the outcome of the claim. And so the comparison is not between Ms. Ghira-Torres' declaration here and what was submitted originally in front of the immigration judge, but rather what her claim would be if she had been properly represented. And here, the evidence she presented with her motion to remand shows that she would have had a viable claim, which is all that is required at this stage to grant her motion to remand. In addition to the evidence relating to prejudice, Ms. Ghira-Torres presented legal arguments and filed over 500 pages of evidence with her motion to remand, none of which the BIA discussed or even cited to in its decision. With her motion to remand, Ms. Ghira-Torres alleged that her prior counsel never even spoke to her. In fact, she never spoke to any attorney until she appeared at her final hearing in front of the immigration judge. Prior counsel never investigated her claim, such that no attorney representing Ms. Ghira-Torres discovered basic facts about her underlying claim. No one ever reviewed Ms. Ghira-Torres' evidence or her declaration or her application with her, even though she had notified prior counsel's office that she could not read. Prior counsel also never collected any evidence or testimony from witnesses, like Ms. Ghira-Torres' partner, and never told Ms. Ghira-Torres that she would need to testify at all, much less prepared her for her testimony in front of the immigration judge. And with this evidence of ineffectiveness of prior counsel, as discussed, Ms. Ghira-Torres also presented evidence and legal arguments. Let me ask you, you have filed a 28-J letter with the suspension documents for Mr. Lacombe's bar license. That's not part of the administrative record, so how are we to consider that? Is that a judicial notice request, or how do we deal with that? So the decision by – it's a published decision by the presiding disciplinary judge of the Arizona Supreme Court, and so it is a published legal decision. This court has cited to other Supreme Court disciplinary decisions. For example, in Morales-Apollinar, it's cited to the California Bar or Supreme Court Bar, their published decision. But this is really more of a fact and evidence issue. It's not, you know, intervening change in the law as we traditionally think of that. So if this was a fact that was not before the BIA, is it proper for us to consider it? I do think so. I think to the extent that the court isn't willing to accept it as legal authority, it can accept it under judicial notice. It is a published decision by another adjudicatory body and is publicly available. But even when we take judicial notice, we don't take judicial notice of the facts. We just take judicial notice of the publication of the case. So how does that help you if we just take judicial notice of the decision but not the facts in the decision? I think it's relevant to this case that prior counsel has engaged in a pattern of misconduct that's relevant to, or that matches the factual pattern of Ms. Guirra-Torres' case. And the Arizona disciplinary judge decided that that did violate a number of ethical requirements under the Arizona Bar. But we don't take judicial notice of the facts that are in the opinion, do we? I think if you take judicial notice, then you can take that under consideration. The lawyer that actually appeared, I know it was a Zoom hearing, but was this a COVID Zoom hearing? It was, Your Honor. Okay, all right. So the lawyer who actually appeared at the Zoom hearing on behalf of the petitioner did make government acquiescence, internal relocation, certainly made arguments in support of the asylum petition or application, excuse me. Would that in any way cure any of Mr. Lacombe's shortcomings? No, Your Honor. The attorney who appeared, who Mr. Lacombe contracted, still didn't provide effective assistance to cure Mr. Lacombe's failings. Although she did present some legal argument and did have Ms. Guirra-Torres testify, the issues with the representation here still remain. Nobody, no attorney who ever presented a case for Ms. Guirra-Torres ever spoke to her or prepared her to testify, never investigated her claim to discover key facts of her case. And so even the case that the attorney who appeared presented had major faults in that, in the theory of that case. In addition to that, she did not present evidence in support of the elder. But most lawyers do have paralegals do the investigation, don't they? Yes. And we're not saying that the issue here is that the paralegals participated in the preparation. It sounds like they're the ones that interviewed the petitioner. They appear to be the ones that drafted the declaration. So is that not a common practice? Of course it's a common practice to rely on paralegals to assist with fact-gathering and drafting. However, the ultimate responsibility of representing a client falls with the attorney. And whether the attorney fulfills that obligation by doing the work themselves or by properly supervising their paralegals, that is an ethical obligation regardless. And so here, even though the paralegals spoke to Ms. Guerra-Torres, nobody, neither the paralegals nor the counsel themselves, ever investigated Ms. Guerra-Torres' claim and presented a claim that just wasn't what happened to her. They provided a claim that basically asserted a generalized gang violence claim, which is very clearly not a – is a bit of an overreach, right? A paralegal did the work. You're just not satisfied with it and you think the lawyer should have had a more active and engaged role in supervision. I disagree with that, Your Honor. Under this Court's case – But you're saying nobody, not even the paralegal, did any investigation? That just seems – I mean, there was a full application. It may have been inadequate in many respects, but there was a full application with declarations and whatnot. Maybe I should be more exact. That's not that no one investigated, but rather no one properly investigated or investigated to the extent that is required by this Court's case law. And under Lynn, it's very clear that even where a prior counsel presented some information or some facts where those facts do not amount to the actual amount of investigation required to discover key facts underlying a client's claim, that is clearly ineffective assistance of counsel. And this Court has been very clear about that under Lynn. I'd like to go back to Judge Koh's first question about whether it would have been enough if even one example had been cited. A concern that courts perhaps should have when imposing obligations on agencies is that they don't raise the requirement so high that it really shuts down the line for those who are seeking relief because they're stopping to write these lengthy opinions. So what do you say to us in terms of how detailed a decision has to be and how we reach the threshold where we say that's an unreasonably short explanation? Of course. And I do know that that's a tricky balance to make. However, I think in this case, the Court doesn't need to even strike new ground on how much is enough because the BIA did not meet the requirements this Court has already set out in its precedent. So, for example, in Maravia Maravia, this Court was clear that where the BIA did not discuss any of the evidence presented on prior counsel's actions in denying an ineffective assistance of counsel claim, that was not sufficient reasoning. Similarly, in Mohamed, when speaking about the BIA's first decision, this Court noted that the BIA didn't even indicate that it had considered any of the evidence presented with the motion to reopen. Under those cases, this BIA's decision is also insufficiently reasoned. There's no citation to or description of any of the facts that Ms. Giratora has presented with her motion to remand. So I do acknowledge that that's always a tricky question. This Court does not want to impose too many requirements on the BIA. But I think that this Court's precedent is clear that it imposes even the minimum that it has already imposed. The BIA did not reach that here. Did you want to say the remaining time for rebuttal, counsel? I will. Thank you so much. Thank you. We'll hear from the government. Thank you, Your Honors. Good morning. I'll leave the mic where it is unless you can't hear me. We can hear you. Thank you. May it please the Court, Peter Gannon for the United States Attorney General. The Board did not abuse its discretion in denying Petitioner's motion to remand where it properly found that Petitioner did not establish her prior counsel's actions were unreasonable, and even if so, that she did not establish prejudice. The Board did not owe her an exegesis on her every contention, but its decision does show that it heard and thought about her motion rather than merely react to it. Additionally, substantial evidence supports the denial of asylum and statutory withholding, and to the extent that Petitioner's counsel raised cap protection in her argument, that has been waived and was not exhausted in the form of any mention in the motion to remand. Let me ask you, how is never meeting with your client, never explaining asylum law to your client in an immigration case, never appearing personally in the case, not getting a declaration or having a primary key corroborating witness provide a letter or come to the hearing? How are those tactical decisions? Your Honor, I think distinguishing this case from G Lynn is the best way to illustrate that. There are some facial similarities in the unpreparedness that resulted from that attorney's conduct that is not present here. But this is more than unprepared, right? Never meeting with the client, never explaining the law to the client, never telling the client they'll have to testify, not preparing the client for testimony. I guess I don't see how these are tactical or strategic. So, Your Honor, I think you alluded to the fact that having paralegals conduct the intake and preparing a lot of the investigation is not an unreasonable thing to have been done. I think from that, the interview that the paralegals did with the Petitioner, we got a declaration from her, some pre-hearing filings from Mr. LeCombe, and a full and fair hearing. Honestly, if she was not prepared for testimony, which we can take as true from her declaration, she still provided adequate and sufficient testimony. She was at times vague and apprehensive, but the immigration judge specifically credited her with always being forthcoming and candid in follow-up questions. The transcript of her testimony does not read like someone who is completely unprepared for testimony and unable to give testimony, like the Petitioner and G. Lynn, who was unable to give a plausible and coherent account for the basis of his alleged fear, and his testimony was lacking in any detail and insufficient to provide corroboration. The Petitioner's testimony, even taking as true what she says about the preparation that went into her case, put forward a claim, and the immigration judge was able to make a reasoned decision on the merits of that claim, which is what this Court found sufficient to inform. So the immigration judge thought the lack of a declaration or testimony from Johnny was important. So why isn't that evidence of prejudice here? So both of these — The decisionmaker thought that that was key evidence that was lacking. Certainly. And the attorney never obtained it, never recommended obtaining it, never recommended that Johnny appear at the hearing. The short answer is the immigration judge then in turn did not in any way base the denial of her applications on that lack of corroboration. You're right. Both the DHS attorney and the judge asked the Petitioner about it, and she said, well, my attorney didn't say I should get any support. But then, again, unlike G. Lynn, which was denied for lack of corroboration, that did not occur here. The immigration judge relied on the testimony she provided to make a finding on the — ended up being the dispositive issue of whether the government of Honduras was unable and unwilling to protect her from the 18th Street Gang. But you would agree that's not a tactical decision, right, not to — I think it's not unreasonable, Your Honor. And it's certainly not unreasonable to the extent that it made his representation constitutionally defective. I guess to the extent that the tactical decision happened somewhere before where it was, you know, the process he set up at his office for what questions the particles ask at the intake and what they do to prepare a claim, I think — So what do you think would be ineffective assistance of counsel? Something like G. Lynn, Your Honor, that left that Petitioner alone, bewildered and unrehabilitated. That was not what happened here. Well, there was no redirect. The lawyer who — the employment lawyer who showed up on the day of without talking to this client did no redirect. So how is that any different? I think, Your Honor, that's just one aspect about G. Lynn that is — But it sounds like a pretty comparable one. Would you agree? But I think the testimony that this Petitioner gave was substantially different from the testimony that the Petitioner gave there, where he did not present a coherent claim or a plausible claim, and redirect would have really done something there. In this case, the Petitioner gave specific testimony about how the police responded to and at least could have investigated each of the instances that she based her original claim on. And then the I.J., based on her direct cross-examination, but her testimony, used that to establish under this Court's precedent that she could not meet her burden to prove that the government of Honduras was unable or unwilling. I think it's — just from the start, this and G. Lynn are very different cases. In G. Lynn, the attorney tried to find a subcounsel to appear that day, just like Mr. Lacombe did, but his — the counsel he arranged for did actually appear. The counsel was more prepared than the attorney in G. Lynn. She was able to lead the Petitioner to describe what happened to her on the two relevant occasions involving the 18th Street Gang. And although her claim was eventually unsuccessful, it was not because of a lack of redirect. Why should we ignore the fact that Mr. Lacombe's bar license was suspended? I think, Your Honor, it's certainly — a 28-J is certainly not a mechanism to supplement the administrative record. And to the extent that the Petitioner is trying to do that, this Court should not allow it. I think even if you look to that fact, though, it really doesn't do too much to answer the question of what did he do in her case, which was her burden to meet in her motion to remand, which she did not do. I'm not here to defend Mr. Lacombe. I'm here to defend the agency's decision. I'll note that, at least from what I could see in those complaints, each one involved something like a late filing or a completely deficient filing or an actual misrepresentation or fraud that he committed against his client. None of those things occurred here, at least nothing that was relied on by the agency in ultimately denying the Petitioner's applications. Do you maintain that the BIA used the correct prejudice standard in making its decision? Yes, Your Honor. I think the Board could have been more clear about the prejudice standard, but it clearly said that the Petitioner did not meet the standard to establish prejudice, and later in that paragraph it cited this Court's precedent on what constitutes prejudice, that it could have changed the outcome, and then it also said the general standard for a motion to reopen or remand based on prima facie eligibility for a new case. Had the Board said the Petitioner did not establish prejudice because she did not establish a reasonable likelihood of success, that would have been error. That would have been the wrong legal standard. The way the Board did phrase it, they were saying two different standards inartfully. But weren't they also relying on the adequacy of prior counsel versus looking at what could have been done with adequate counsel? I think the Board looked to the issue of unable and unwilling and determined that that resolved the new claims that Petitioner presented to the extent that they related to the 18th Street Gang, and what she presented did not change that finding. It may have, again, she may have tried to make other claims about other things, but I think when you look at the administrative record, those claims would not have been viable for other reasons. So you're right, Your Honor, the Board did make some reference to the full hearing that she had in its prejudice paragraph. I think you're right to be reluctant to rely too much on that where it's a bit circular there. But where in the BIA's decision do they actually analyze what adequate counsel could have done versus whether what prior counsel did was enough? I think, Your Honor, that's where this Court's case law on what detail the Board has to go into is what establishes that the Board did not abuse its discretion in what it did say. The Board doesn't have to address Petitioner's every contention. The Board, however, did acknowledge her motion. It acknowledged in broad strokes the arguments she made in her motion, her complaints about her prior counsel, and it simply said that was not enough to establish that he acted unreasonably, and even if so, it was not enough to establish prejudice. So you want us to make an inference that they considered what adequate counsel could have done? Yes, Your Honor. I mean, I think when they apply the correct legal standard and they indicate that they heard and thought about the Petitioner's motion rather than merely react to it and the administrative record doesn't suggest otherwise, yes, Your Honor, I believe you can. Does the Justice Department have institutional concerns about granting relief in cases like this? I mean, this does not appear to be a case where a person is just disgruntled, unhappy with the outcome, and moves to remand to get another shot, a second bite at the apple, so to speak. This is something where we have evidence of malpractice. We have a showing made extensively by the movement and a little bitty explanation addressing it. So is there an institutional concern that somehow we open the floodgates? Otherwise, it just seems that justice would support remaining this case and let the case be developed and win or lose. I think the institutional interests of both this Court and the Department of Justice and everyone involved is the case law that this Court and the Board has on when to reopen for ineffective assistance in the counsel. And what the Petitioner put forward here did not meet her burden. I don't, to the extent that the 28J submits some evidence that Mr. Lecombe is suspended for good reason, that's not what the Petitioner put in front of the Board in its motion or in her motion. She really, from what I can tell, her complaints boiled down to that he didn't do enough to investigate her claim. His paralegals didn't specifically ask her about the sexual abuse she experienced in Honduras and that they could have gone to Johnny for some more information. None of those were unreasonable or would have changed, could have changed the outcome in her case. Like I said, she gave a full testimony that the IJ credited with she struggled at times but was always forthcoming and candid. I think the asking specifically about sexual abuse doesn't mean that the questions they did ask her were unreasonable, where the questions that they did ask her led to a full declaration of some pre-hearing filings and a full evidentiary hearing on her claim, where the immigration judge was able to make a full decision on the merits of the claim. And then lastly, Johnny's declaration is inconsistent with her testimony. It's inconsistent with the declaration that they provided from the community leader, community group leader. It doesn't do anything to change the outcome of her case, again, where it doesn't establish any flaw in the immigration judge's unable and unwilling determination that was based on her own testimony. If the Court has no further questions, I'm about to be here for the rest of my time. It appears not, counsel. Rebuttal. Thank you, Your Honors. I have three short points. So first, Respondent's counsel continues to rely on arguments that the BIA never relied on in its decision and thus are foreclosed by Chenery as a matter of due process and basic principles of administrative law. The Court can only evaluate and uphold the BIA based on the reasoning it relied upon in its decision. So our speculative arguments about how the BIA decided this case, such as which actions prior counsel took that made his representation competent, whether Johnny's declaration contradicted Ms. Ghira-Torres' testimony, whether Ms. Ghira-Torres' underlying claims were viable and why they wouldn't be, and whether Ms. Ghira-Torres' testimony was sufficient to prove effectiveness of counsel. Those are not reasons that the BIA relied on in its decision, and therefore they are foreclosed by Chenery. As to ineffectiveness, Respondent's counsel has presented no argument as to how prior counsel's performance was tactical. That's the only conclusion that the BIA reached here, and there are no arguments under this Court's precedent for why Ms. Ghira-Torres' prior counsel's failings were tactical here. Finally, as to prejudice, Respondent's counsel argues that there's no prejudice because the immigration judge didn't rely on a lack of corroborating evidence, but the immigration judge did rely on other errors that stem from prior counsel's ineffectiveness. These include the lack of argument or evidence presented as to nexus, the incognizability of the particular social groups presented, and the Honduran government's unwillingness and inability to protect Ms. Ghira-Torres from persecution. Respondent's counsel, importantly, never acknowledged any of the new evidence that Ms. Ghira-Torres presented as to those claims, showing that there is nexus, that she has particular social group definitions that would be cognizable, and that the Honduran government would be unable and unwilling to protect her. If the Court has no further questions, we ask that the Court grant the petition and remand the BIA. Thank you, counsel. You're not asking us to make the ultimate merits decision, just remand back to the I think it would be the simplest answer to remand. This Court can obviously weigh in on any of the legal errors that the BIA may have engaged in in its decision as well. Those are properly before this Court. Thank you. All right. Thank you, counsel. Thank you to both counsel for your helpful arguments. The case just argued is submitted for decision by the Court.
judges: RAWLINSON, KOH, Fitzwater